UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RUSSELL MORRIS DALLEN, JR.**                     **CIVIL ACTION**

**VERSUS**                                         **NO:   15-2348**

**MARITIME SYSTEMS, INC., ET AL**                  **SECTION: "B" (4)**

### Report and Recommendation

Before the Court is **Motion for Default Judgment (R. Doc. 31)** filed by the *pro se* Plaintiff Russell Morris Dallen, Jr. ("Plaintiff") seeking an entry of default pursuant to Federal Rule of Civil Procedure 55(b) against Maritime Systems, Inc. On June 22, 2016, the District Court issued an Order of Reference to the United States Magistrate Judge (R. Doc. 34) referring this matter to the undersigned to conduct a hearing, including an evidentiary one if appropriate, and to issue a Report and Recommendation. The Court conducted on evidentiary hearing on November 30, 2016. R. Doc. 55.

**I.   Background**

This diversity action was filed in the District Court on June 29, 2015. R. Doc. 1. The Plaintiff alleges that in August of 2006 he brought the Samoa, his 62' Dynamique vessel, to Defendant Maritime Systems, Inc. d/b/a GulfSouth Yacht Works ("Defendant") for boat repair. *Id.* at p. 2. The Plaintiff alleges that the Samoa has remained in the Defendant's care and possession since that time. *Id.* The Plaintiff avers that he has paid over $150,000 since 2006 for repairs, but the Samoa has not moved from the Defendant's yard and the repairs have not been completed. *Id.*

Moreover, in 2008, the Plaintiff sued a former employee of the Defendant for fraud after the Plaintiff had paid that employee money for the Samoa's repair that was not turned over to the Defendant. In March of 2009, the Plaintiff states that he received a judgment against that employee

1

for $42,630 in addition to on-going interest and twenty-five percent for attorney's fees. *Id.* The Plaintiff states that the judgment remains unsatisfied and largely unpaid.

The Plaintiff states that in November of 2011 he re-contracted with the Defendant to repair the Samoa. The Plaintiff states that this contract was a replacement for a previous contract that was unfinished and breached by the Defendant. That contract allegedly stated a value of $25,000.00. *Id.* at p. 11. The Plaintiff states that he paid $10,000 in consideration for this contract on November 23, 2011. *Id.* at p. 3.

The Plaintiff states that his credit card was charged another $7,500 by the Defendant in March of 2012. *Id.* at p. 3-4. The Plaintiff further states that the Defendant assured him at that time that the boat would be ready in two months. *Id.* The Plaintiff states that the timing was important in order to transport the boat below the hurricane line in the Caribbean before the hurricane season. *Id.* at p. 4. He further alleges that the Defendant knew that the Samoa was chartering at $8,000.00 a week and should have been aware of delay damages.

The Plaintiff seems to allege that the boat is at this time in "towable condition" and less than the "seaworthy" condition contracted for. *Id.* at 4, 11. He states that the Samoa is so damaged that the boat's motor and steering no longer work because both are missing crucial and almost irreplaceable parts, including extremely special quadrant gears. *Id.* at p. 4.

Plaintiff states that the Defendants now want the Plaintiff to take back this substantially damaged vessel. Plaintiff states that the Defendant's repeated failure to repair the boat and leaving it exposed to the elements has resulted in damage to the vessel's sails, masts, stays, stanchions, spreaders, turnbuckles, boom, line, steering, and wooden interior. *Id.* Moreover, the Samoa's Polaris Flying Dinghy has also been allegedly damaged.

Plaintiff states that the total cost of repairs is unknown or even if the boat can be repaired. *Id.* He states that the cost of replacing the Samoa is $500,000. *Id.* The Plaintiff seeks that $500,000 in addition to the $150,000 made in contract payments to the Defendant's breach contract and the $20,000 for the loss of the Flying Polaris Dinghy. R. Doc. 31-1, p. 4. As such, the Plaintiff seeks a sum of $670,000 plus interest. *Id.*

The Defendant was served on June 29, 2015, through its Registered Agent Charles Green, Jr. R. Doc. 7. On September 4, 2015, the Plaintiff filed a Motion for Entry of Default as to Defendant Maritime Systems pursuant to Federal Rule of Civil Procedure 55(b). R. Doc. 6. On September 10, 2015, the Motion for Entry of Default was granted as to the Defendant. R. Doc. 9. On May 31, 2016, the Plaintiff filed the instant Motion for Default Judgment after a show cause order was issued by the District Judge. R. Doc. 31. The motion was referred to the undersigned on June 22, 2016.

On November 30, 2016, the Court conducted an Evidentiary Hearing. During that Hearing, the Court received Exhibit 1 and Exhibit 2 as evidence of the value of the Plaintiff's boat as well as the value of the Plaintiff's dinghy. *See* Attached Exhibits 1 and 2. The Plaintiff also presented an account statement supposedly demonstrating payments made to the Defendant. *See* Attached Exhibit 3. However, the Court was unable to determine the import of that statement. As such, the Court determined that it needed additional evidence for its consideration of the motion. In particular, the Court instructed the Plaintiff to file additional evidence concerning payments made to Maritime Systems, Inc. d/b/a GulfSouth Yacht Works no later than December 7, 2016. R. Doc. 55. As of yet, the Plaintiff has not complied with the Court's order to produce this additional evidence.

## II. Standard of Review

Federal Rule of Civil Procedure 55 governs Default Judgments. Under Rule 55(a), "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." After a Default has been entered by the Clerk, a party may seek a Default Judgment under Rule 55(b). If the Plaintiff's claim is for a sum certain or that sum can be made by certain computation, "the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount, and costs against a defendant who has been defaulted for not appearing." Fed. R. Civ. P. 55(b)(1). However, in all other cases, the party must apply to the Court for a Default Judgment, who may conduct a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). "'There must be sufficient basis in the pleadings' for the entering of a default judgment, and the court must accept the well-pleaded factual allegations in the plaintiff's complaint." *Meyer v. Bayles*, 559 F. App'x 312, 313 (5th Cir. 2014) (quoting *Nishimatsu Constr. Co. v.. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

## III. Analysis

### A. Jurisdiction and Venue

"'[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *System Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings and Loan,* 802 F.2d 1200, 1203 (10th Cir.1986)). A judgment entered in the absence of jurisdiction would be void, *id.*; therefore, the Court must first assure itself that jurisdiction exists in this case.

Here, the Court has diversity jurisdiction over the instant case. The Court "may exercise diversity jurisdiction over a civil action between citizens of different States if the amount in controversy exceeds $75,000." *Flagg v. Stryker Corp.*, 819 F.3d 132, 135 (5th Cir. 2016) (citing 28 U.S.C. 1332(a)(1)). Moreover, "diversity jurisdiction requires complete diversity—if any plaintiff is a citizen of the same State as any defendant, then diversity jurisdiction does not exist." *Id.* at 136. "To be a citizen of a State within the meaning of section 1332, a natural person must be both a citizen of the United States, and a domiciliary of that State." *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir. 1974) (internal citations omitted). "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. 1332(c)(1). "[A] corporation's principal place of business is "'where the corporation's high level officers direct, control, and coordinate the corporation's activities.'" *PGS USA, LLC v. Popi Trading, Inc.*, No. 16-6669, 2016 WL 4261726, at *2 (E.D. La. Aug. 12, 2016) (quoting *Swindol v. Aurora Flight Sci. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015)).

Here, the requirements for diversity jurisdiction appear to have been met. First, the amount in controversy requirement appears to exceed $75,000 as the Plaintiff has asserted damages of more than $650,000. R. Doc. 1, p. 2. Second, the Plaintiff is a citizen of the United States and resides in Broward County, Florida. *Id.* at p. 1. The Defendant, Maritime Systems, Inc. is a corporation incorporated in the State of Louisiana, R. Doc. 31-2, p. 6. The Plaintiff has also alleged that the Defendant's primary place of business is located in Louisiana. R. Doc. 1, p. 1. This is also the Principal Office Address for the Defendant. R. Doc. 31-2, p. 6. As such, the Defendant is a citizen of Louisiana. *Swindol*, 805 F.3d at 519. Defendant Bill Dupuy is a resident of Louisiana.

Because the Defendants are citizens of Louisiana and the Plaintiff is a citizen of Florida, complete diversity exists. *Flagg*, 819 F.3d at 135. Therefore, diversity jurisdiction exists.

The Court also has personal jurisdiction over the Defendant. "Because Louisiana's Long–Arm Statute extends personal jurisdiction to the limits of due process, this court need only determine whether subjecting [the Defendant] to suit in Louisiana would offend the Due Process Clause of the Fourteenth Amendment." *Thomas v. Kennedy*, 75 F. App'x 281, 283 (5th Cir. 2003). "A state has general jurisdiction over a defendant when the defendant has continuous and systematic contacts with the forum state." *Id.* (quoting *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 444 (1952)). As an incorporation residing and operating in the state of Louisiana, the Defendant doubtlessly has sufficient minimum contacts for the Court to exercise personal jurisdiction over the resident Defendant without offending the Due Process Clause of the Fourteenth Amendment.

Finally, venue is also proper. The Defendants are both residents of Louisiana within the Eastern District and the events giving rise to the action appear to have occurred in the Eastern District. *See* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in. . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located [or] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.").

**B.     Entry of Default Judgment**

Although judgments by default are generally disfavored, *see Lindsey v. Prive Corp.,* 161 F.3d 886, 893 (5th Cir.1998), the Court finds that the Defendant's failure to appear impedes the "just, speedy, and inexpensive disposition" of this case on the merits. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir.1989). The Defendant's registered agent was

served with process on June 29, 2015. R. Doc. 7. To this date, the Defendant has failed to appear, and there also appears to be no excuse for the Defendant's failure to appear nor any indication that the Defendant intends to defend this suit. As such, the Court will "determine whether the facts alleged in the complaint, taken as true, constitute a legitimate cause of action, and if they do, the Court will enter a default judgment in favor of the plaintiff." *Myers v. Powell*, No. 12-2181, 2013 WL 3822414, at *3 (E.D. La. July 23, 2013).

Turning to the Plaintiff's stated cause of action, the undersigned notes that because the Plaintiff is *pro se* it will "liberally construe his arguments." The Plaintiff appears to assert a bad faith breach of contract claim. Under Louisiana law, "[t]he essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Denham Homes, LLC v. Teche Fed. Bank*, 182 So.3d 108, 119 (La. App. 1st Cir. 2015) (citing La. Civ. Code. Ann. art. 1994). Accepting the facts of the complaint, the Plaintiff appears to have established a *prima facie* case of breach of contract under Louisiana law. First, the Plaintiff has alleged that he entered into a number of contracts with the Defendant for the repair of his vessel, the Samoa, including a contract in November of 2011. R. Doc. 1, p. 2. Second, the Plaintiff has alleged that the Defendant failed to perform the necessary repairs to the Samoa as required under the contract. *Id.* at p. 2-3. Third, the Plaintiff has further alleged that the Defendant's failure to perform the necessary repairs has resulted in not only a loss of the Plaintiff's payment of over $150,000, but also in further damage to the Samoa, necessitating either replacement or extensive repair. *Id.* at 3.

Moreover, the Plaintiff has alleged that the Defendant breached the contract in bad faith. "Bad faith is an intentional and malicious failure to perform. . .[which] means more than mere bad

7

judgment or negligence and it implies the conscious doing of a wrong for dishonest or morally questionable motives." *Volentine v. Raeford Farms of Louisiana, LLC*, 201 So.3d 325, 338 (La. App. 2d Cir. 2016) (citing La. Civ. Code Ann. art. 1997). Accepting the allegations of the Plaintiff's complaint as true, the Court finds that the Plaintiff has stated a case for bad faith, namely that the Defendant continued to entice further payments from the Defendant while not working at all towards repairing the boat but rather allowing the condition of the boat to deteriorate to the point of being unusable.

### C. <u>Damages</u>

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *U.S. For Use of M–CO Const., Inc. v. Shipco Gen., Inc.,* 814 F.2d 1011, 1014 (5th Cir.1987). "A default judgment does not, however, establish the amount of damages that the Court will award." *Meyers*, 2013 WL 3832414, at *4. "As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing…" *James v. Frame,* 6 F.3d 307, 310 (5th Cir.1993).

Under Louisiana law, Plaintiff is entitled to those damages caused by the Defendant's failure to perform his obligation. *See Dozier v. Dean Richard Enterprises, Inc.*, 772 So.2d 322, 325 (La. App. 3d Cir. 2000) (citing La. Civ. Code Ann. art. 1995). "Much discretion is left to the trial court for a reasonable assessment of these damages." *Id.* (quoting citing La. Civ. Code Ann. art. 1999). Moreover, "[a]n obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." La. Civ. Code Ann. art. 1997. Here, the loss of the Plaintiff's boat, flying dinghy, and the lost payments to the Defendant appear to be a direct consequence of the Defendant's failure to perform the repair work.

Here, the Plaintiff seeks: $500,000 for the loss of the Samoa; $150,000 in breached contract payments; and $20,000 for the loss of the Flying Polaris Dinghy. R. Doc. 31-1, p. 4. During the evidentiary hearing on November 30, 2016, the Court received additional evidence from the Plaintiff. According to the undersigned's evaluation of the evidence presented by the Plaintiff, the Court recommends that the Plaintiff be awarded $422,130 for the loss of the Plaintiff's boat. *See* Exhibit 1 (listing price of similar vessel). Also, based on the evidence presented to the Court, the Court will further recommend the Plaintiff be awarded $20,000 for the Polaris Flying Dinghy. *See* Exhibit 2 (listing asking price of $25,000).

However, as to the Plaintiff's request for $150,000 in breach contract payments and to court costs, the Court will not recommend that the Plaintiff be awarded those damages. During the Evidentiary Hearing, the Plaintiff presented the Court an account statement supposedly demonstrating payments made to the Defendant. *See* Attached Exhibit 3. However, the Court was unable to determine the import of that statement. As such, the Court determined that it needed additional evidence for its consideration of the motion. In particular, the Court instructed the Plaintiff to file additional evidence concerning payments made to Maritime Systems, Inc. d/b/a GulfSouth Yacht Works no later than December 7, 2016. R. Doc. 55. As of yet, the Plaintiff has not complied with the Court's order to produce this additional evidence. Similarly, the Plaintiff has not presented any evidence of what court costs he might be entitled to. Therefore, the Court recommends that the Plaintiff not be awarded these damages or costs that have not been properly evidenced.

Ultimately, then, the undersigned recommends that the Court award the Plaintiff $442,130 in damages.

**IV.     Recommendation**

Accordingly,

**IT IS RECOMMENDED** that the Plaintiff's **Motion for Default Judgment (R. Doc. 31)** be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that judgment be entered in favor of Plaintiff Russell Morris Dallen, Jr. and against Defendant Maritime Systems, Inc. d/b/a GulfSouth Yacht Works.

**IT IS FURTHER RECOMMENDED** that the Plaintiff Russell Morris Dallen, Jr. be awarded $442,130.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 16th day of December 2016.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**